UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re: Barrier One, Inc.

BARRIER ONE, INC.,

        Appellant,

v.                                Case No: 6:25-cv-107-PGB

LORI PATTON and JOHN VAN
HORN,

        Appellees.
_____/

## ORDER

This cause comes before the Court without oral argument upon Appellant Barrier One Inc.'s (the "**Debtor**") Initial Brief (Doc. 21) and Appendix thereto (Doc. 22). Appellee Lori Patton (the "**Trustee**")) filed an Answer Brief (Doc. 25 (the "**Response Brief**")) and Appellee John Van Horn ("**Van Horn**")[1] filed a Notice of Joinder in the Response Brief (Doc. 26). Upon review of the record and the parties' submissions, the Court determines that this consolidated bankruptcy appeal is due to be dismissed as a result of Debtor's lack of appellate standing.

## I.   BACKGROUND

Through this consolidated appeal, Debtor challenges two orders of the bankruptcy court entered in his Chapter 7 bankruptcy case below, *In re Barrier*

---

[1]   Herein, the Trustee and Van Horn will collectively be referred to as the "Appellees."

*One, Inc.*, No. 6:23-bk-00115-LLV (Bankr. M.D. Fla. 2023) (the "**Bankruptcy Case**"). In those orders, the bankruptcy court (1) struck Debtor's objections to two proofs of claim that had been submitted by creditors after finding he lacked standing to assert such objections (Doc. 4-1-14 (the "**Order Striking Objections**")), and (2) approved of a settlement as to one of the aforementioned claims (Doc. 4-1-15 (the "**Order Approving Compromise**")) (collectively, the "**Subject Orders**").

On January 12, 2023, Debtor filed a Voluntary Petition for Bankruptcy pursuant to Chapter 7 of the Bankruptcy Code. (Doc. 22, pp. 17–44 (the "**Petition**")). Therein, in its Schedules, Debtor identified that it had no assets of any kind and disclosed estimated liabilities between "$1,000,001 – $10 million." (*Id.* at pp. 24–32 (the "**Schedules**")). Soon thereafter, the Trustee was appointed as trustee of Debtor's bankruptcy estate. (Doc. 21, p. 7).

In due course, the bankruptcy court set a deadline of June 29, 2023, for creditors to file proofs of claim. (Doc. 4-1-3, p. 1). Two such proofs of claim were ultimately filed. First, on February 23, 2023, FedEx Corporate Services, Inc. filed a proof of claim (Doc. 6-1-1 (the "**FedEx Claim**")) for $7,802.79. Then, on June 29, 2023, Van Horn filed a proof of claim (Doc. 6-1-2 (the "**Van Horn Claim**"))[2] for $6,038,041.

The Van Horn Claim was for Van Horn's damages in a state court action then pending in Florida's Ninth Judicial Circuit Court, *John Van Horn v. Richard Koon,*

---

[2]    Collectively, the FedEx Claim and Van Horn Claim will be referred to as the "Claims."

*et al*, No. 2015-CA-010999-O (Fla. 9th Jud. Cir. Ct. 2015) (the "**State Court Action**") against Debtor and affiliated individuals and entities. In the State Court Action, Van Horn alleged that he was induced to enter a business venture with Debtor's principals—husband and wife Richard Koon ("**Mr. Koon**") and Ellen Koon (collectively, the "**Koons**")—to develop and sell a new product for use in concrete construction. (Doc. 6-1-2, ¶¶ 16–17, 19–28).[3] Van Horn alleged that the Koons ultimately perpetrated a fraudulent scheme against him by creating new entities and concealing their involvement with those entities to usurp business opportunities and siphon funds from the original enterprise. (*See generally* Doc. 6-1-2, pp. 8–76). Van Horn further averred that the Koons ultimately induced him to relinquish his interest in the original enterprise through misrepresentations of its financial distress. (*E.g.*, *id.* ¶¶ 113–23). Thus, Van Horn brought various causes of action against the defendants in the State Court Action, including claims against Debtor for fraud (Count II), civil conspiracy (Count VII), and constructive fraud (Count VIII). (*Id.* ¶¶ 163–78, 249–74).

At the time Debtor filed the Petition in January 2023, the State Court Action had been pending for roughly eight years and was set for jury trial on a three-week docket beginning on July 3 of that year. (Doc. 4-1-4, p. 2). As a result of Debtor filing the Petition, an automatic stay was entered as to Van Horn's claims against

---

[3]   The relevant iteration of the complaint in the State Court Action, which was operative at the time of the Order Approving Settlement, is the Second Amended Complaint (Doc. 6-1-2, pp. 8–76). Although the Second Amended Complaint is one part of a larger docket entry in the record on appeal, in this Order, the Court nevertheless cites to the paragraphs of the Second Amended Complaint to allow for more precise citations.

Debtor in the State Court Action pursuant to 11 U.S.C. § 362. (*See id.*). Then, in May 2023, the remaining defendants in the State Court Action settled Van Horn's claims against them. (*Id.*). Accordingly, in October 2023, all of Van Horn's claims in the State Court Action, aside from those against Debtor, were dismissed with prejudice. (*Id.*).

Roughly one year later, on November 20, 2024, Trustee and Van Horn filed a joint motion with the bankruptcy court seeking approval of a settlement agreement between them pursuant to Bankruptcy Rule 9019 (Doc. 4-1-4 (the "**9019 Motion**")). Under the terms of the Settlement Agreement (Doc. 4-1-4, pp. 11–42 (the "**Settlement Agreement**")), first, Appellees would jointly move the bankruptcy court for relief from the bankruptcy stay imposed on the State Court Action. (*Id.* at p. 13). Next, Trustee would file a motion in the State Court Action seeking to be substituted for Debtor. (*Id.* at pp. 13–14). Appellees would then stipulate to entry of a judgment of $5,000,000 in favor of Van Horn, thereby granting him an unsecured claim of this reduced amount in the Bankruptcy Case. (*Id.*). Finally, Van Horn would "initiate further prospective proceedings to collect upon or enforce the Judgment . . . ." (*Id.* at p. 14). However, any recoveries made through such efforts would be "remitted to the Trustee" and would become property of the bankruptcy estate to be distributed in a manner specified in the Settlement Agreement. (*Id.* at pp. 14–15).

On December 5, 2024, Debtor filed timely objections to the FedEx Claim (Doc. 4-1-7 (the "**Objection to FedEx Claim**")) and Van Horn Claim (Doc. 4-1-

8 (the "**Objection to Van Horn Claim**")) (collectively, the "**Objections to Claims**")) as well as to the 9019 Motion (Doc. 4-1-9 (the "**Objection to Compromise**")).[4] The bankruptcy court initially ordered that any such objections would be heard at a "final evidentiary hearing" held on December 10, 2024 (the "**Hearing**"). (Doc. 4-1-6). However, after Debtor moved to continue the Hearing, on December 9, 2024, the bankruptcy court entered an Order stating the Hearing would "proceed as a preliminary hearing only." (Doc. 4-1-11). That same day, the Trustee filed a motion seeking to strike Debtor's Objections (Doc. 4-1-12 (the "**Motion to Strike**")). Therein, the Trustee argued that Debtor lacked standing to file the Objections. (*See id.*).

At the Hearing, after considering the arguments of counsel, the bankruptcy court ultimately found that Debtor had failed to meet its burden of establishing its standing to file the Objections. (*See, e.g.*, Doc. 22, 192:4–193:4). The bankruptcy court thus granted the Motion to Strike and entered the Order Striking Objections. (Doc. 4-1-14). As a result, the bankruptcy court found the 9019 Motion to be unopposed and determined it did not need to hold a final evidentiary hearing thereupon. (Doc. 4-1-15; Doc. 22, 193:10–15). However, the bankruptcy court acknowledged it still had "an obligation to consider the compromise absent any objections" and found it fell within the range of reasonableness. (Doc. 22, 193:16–

---

4   The Objections to Claims (Docs. 4-1-7, 4-1-8) and Objection to Compromise (Doc. 4-1-9) will collectively be referred to herein as the "Objections."

25). The bankruptcy court thus granted the 9019 Motion in the Order Approving Compromise. (*Id*. 194:9–11; *see* Doc. 4-1-15).

The Trustee asserts that Debtor failed to obtain a stay of either the Order Approving Compromise, the subsequent order seeking relief from the stay of the State Court Action, or the entry of the $5,000,000 state court judgment in favor of Van Horn. (Doc. 25, p. 33). Thus, the Order Approving Compromise was "substantially consummated and a state court Final Judgment was entered and recorded in the public record of two counties." (*Id*. at p. 36).

In this consolidated appeal,[5] Debtor argues that the bankruptcy court erred (1) by finding it lacked standing to file the Objections, and (2) by granting the 9019 Motion as Trustee failed to establish it was fair and reasonable. (Doc. 21, pp. 6–7). Accordingly, Debtor asks that the Court reverse the Order Striking Objections and Order Approving Compromise. (*Id*. at p. 21). In the Response, the Trustee raises numerous arguments—spanning issues of waiver, jurisdiction, and equitable mootness—including, importantly, that Debtor lacks standing to pursue the instant appeal. (*See generally* Doc. 25).

---

[5]   This action initially concerned only Debtor's appeal of the Order Striking Objections. (Doc. 1). The bankruptcy court's Order Approving Compromise was the subject of a separate appeal, *Barrier One, Inc. v. Patton et al. (In re Barrier One)*, No. 6:25-cv-108-PGB, Dkt. 1 (M.D. Fla. Jan. 21, 2025) (the "**Related Appeal**"). On March 13, 2025, the Court granted the Trustee's unopposed motion in the Related Appeal seeking to consolidate the appeals and designated the instant case as the lead case. *Barrier One*, No. 6:25-cv-108-PGB, Dkt. 23.

## II.   LEGAL STANDARD

This Court has jurisdiction over this appeal from the final orders of the bankruptcy court pursuant to 28 U.S.C. § 158. In bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its resolution of legal questions *de novo. Coady v. D.A.N. Joint Venture III, L.P.*, 588 F.3d 1312, 1315 (11th Cir. 2009) (per curiam).

## III.   DISCUSSION

The Court must first address the Trustee's threshold argument that Debtor lacks standing to bring this appeal, as Debtor has not met its burden of demonstrating it is a "person aggrieved" by the Subject Orders. (Doc. 25, pp. 37–42). Only a "person aggrieved" by an order of the bankruptcy court has standing to appeal therefrom. *Atkinson v. Ernie Haire Ford, Inc. (In re Ernie Haire Ford, Inc.)*, 764 F.3d 1321, 1325 (11th Cir. 2014). "The person aggrieved doctrine limits the right to appeal a bankruptcy court order to those parties having a direct and substantial interest in the question being appealed." *Petricca v. Jensen (In re Petricca)*, 718 F. App'x 942, 944 (11th Cir. 2018) (per curiam) (quoting *In re Ernie Haire Ford, Inc.*, 764 F.3d at 1325)).[6]

"Courts have widely agreed that the person aggrieved doctrine limits standing to appeal a bankruptcy court order to those individuals who have a financial stake in the order being appealed." *Westwood Cmty. Two Ass'n, Inc. v.*

---

[6]   "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

*Barbee (In re Westwood Cmty. Two Ass'n, Inc.)*, 293 F.3d 1332, 1335 (11th Cir. 2002) (citing *Harker v. Troutman (In re Troutman Enters., Inc.)*, 286 F.3d 359, 364 (6th Cir. 2002)). Further, "[a] person has a financial stake in the order when that order 'diminishes their property, increases their burdens or impairs their rights.'" *Id.* (quoting *Troutman,* 286 F.3d at 364).

The Trustee essentially argues that, for the same reasons Debtor lacked standing to lodge the Objections in the bankruptcy court, Debtor is not a "person aggrieved" by the Subject Orders. (Doc. 25, pp. 37–42). As Trustee notes, "[d]ebtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor." *Monus v. Lambros*, 286 B.R. 629, 634 (N.D. Ohio 2002) (quoting *Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 151 F.3d 605, 607 (7th Cir. 1998)); (*see* Doc. 25, p. 39).

Of relevance, "[t]here is an established exception" to this principle, which is "not so much an exception as a careful application of the pecuniary interest rule itself." *In re Cult Awareness*, 151 F.3d at 608. That is, a debtor may have a pecuniary interest in a bankruptcy court order, and thus standing to appeal, where there's a "reasonable possibility of a surplus" in the bankruptcy estate. *Id.*; *see also White-Lett v. NewRez, Inc.*, 661 B.R. 63, 82 (N.D. Ga. 2024). Relatedly, a debtor may also have standing to object to such an order where the order would impose a concrete monetary obligation on the debtor post-bankruptcy. *See Monus*, 286 B.R. at 634–35 (citations omitted).

Accordingly, the appellate standing issues essentially merge with the standing issues that are the subject of the appeal—namely, Debtor's contention that it had standing in the bankruptcy court to file the Objections based upon its purported financial interest in the outcome of the Claims and the Settlement Agreement. (*See generally* Doc. 21, pp. 9–16). For this reason, and because Debtor does not separately provide the basis for its appellate standing, the Court looks to the standing arguments Debtor advances with respect to the proceedings below in determining whether it has standing to pursue this appeal. (*See generally* Doc. 21).

### A.   Reasonable Possibility of Surplus (Objections to Claims)

In the Initial Brief, Debtor asserts that he had standing to bring the Objections to Claims "based upon the possibility of surplus" if the Claims were both disallowed. (*Id.* at p. 14). Debtor's argument rests entirely on representations by the Trustee, including in the 9019 Motion, regarding the fact that Appellees were "looking at various lawsuits" to try and collect additional assets for the bankruptcy estate. (*Id.* at p. 15). For example, when arguing in support of its standing to raise the Objections at the Hearing, Debtor's counsel stated "there's been some comments that we may be the subject of . . . fraudulent transfer actions" by Van Horn as a result of the proposed Settlement Agreement, "[b]ut we don't really know enough right now . . . because the [9019] [M]otion doesn't really set out . . . what the potential claims are that are going to be pursued." (Doc. 22, 182:22–183:5).

In rejecting this argument, the bankruptcy court noted Debtor bore the burden of proving its standing and that under the Schedules, which "Debtor filed . . . under penalty of perjury," this is "a no-asset case." (*Id.* 192:6–9, 192:23–193:1). The bankruptcy court further explained that, under *In re Mohr*, it could look to the Debtor's Schedules in making the determination regarding whether there was a reasonable possibility of a surplus. (*Id.* 192:9–15); *see In re Mohr*, 538 B.R. 882, 885–86 (Bankr. S.D. Ga. 2015). The bankruptcy court highlighted:

> [I]n the [S]chedules, the Debtor listed no assets. Obviously, the Debtor here and Mr. Koon[7] don't believe there are any assets. They don't believe there are these causes of action. So it's kind of circular, right, to come in and argue there's going to be a surplus for causes of action that they don't think should be brought.

(Doc. 22, 192:16–22). The bankruptcy court thus determined Debtor failed to establish its standing based upon a possible surplus and, ultimately, entered the Order Striking Objections. (*E.g.*, *id.* 192:4–6; Doc. 4-1-14).

The bankruptcy court's finding that there was no reasonable possibility of a surplus is a factual finding that can only be set aside for clear error. *White-Lett*, 661 B.R. at 85; *In re Cult Awareness*, 151 F.3d at 608. However, regardless of whether the Court applies the clear error or *de novo* standard of review, the Court agrees with this finding of the bankruptcy court. As Trustee notes in the Response Brief, in order to establish standing based upon a surplus of the bankruptcy estate, "[t]he debtor must show more than a metaphysical possibility of surplus; instead

---

[7]   In addition to counsel for Debtor, counsel for Mr. Koon was also present at the Hearing.

it 'must show that such surplus is a reasonable possibility.'" *Khan v. Regions Bank (In re Khan)*, 544 F. App'x 617, 619 (6th Cir. 2013) (quoting *Lunan v. Jones (In re Lunan)*, 523 F. App'x 339, 340 (6th Cir. 2013) (per curiam)).

In support of such a possible surplus, Debtor does not assert that the bankruptcy case has acquired any new assets. Instead, Debtor points generally to the possibility of additional funds entering the estate through potential or pending adversary proceedings identified by the Trustee. (Doc. 21, pp. 14–16). But Debtor offers no concrete evidence as to their probable success or expected net recovery. Indeed, aside from providing a generic reference to a single adversary proceeding with a record citation in the Initial Brief, Debtor does not otherwise identify or describe such proceeding(s) at all. (*Id.* at p. 15). On this record, Debtor's speculation falls short of establishing a reasonable possibility of a surplus. *See In re Khan*, 544 F. App'x at 619; *see also In re Cult Awareness*, 151 F.3d at 608 (declining to find a reasonable possibility of a surplus based upon pending litigation with an uncertain outcome). Accordingly, Debtor has not demonstrated a pecuniary interest to appeal the Order Striking Objections, and the Court lacks standing to address this order.

### B. Non-Dischargeable Claims (Objection to Compromise)

In the Initial Brief, Debtor asserts that he had standing to bring the Objection to Compromise because of his "pecuniary interest in the settlement of non-dischargeable claims." (Doc. 21, p. 17). In support, Debtor states that, under 11 U.S.C. § 727(a)(1), "[b]ecause Debtor is a corporation, it is not entitled to a

11

discharge upon the completion of the Bankruptcy Case." (*Id.*). Further, Debtor notes that the Settlement Agreement forecloses Debtor's ability to challenge the merits of the State Court Action by agreeing to the entry of a judgment and then allowing Van Horn to enforce that judgment. (*Id.*).

To begin, the Court notes that this argument appears to depend on the premise that Debtor will remain a viable entity post-bankruptcy such that creditors could realistically pursue collection. But Debtor—an entity with no assets at the time of the Petition—offers no basis in the record to support that assumption. (*See* Doc. 21, pp. 12–16).

However, the Court need not delve into the merits of Debtor's argument regarding non-dischargeability because, as Trustee notes, Debtor failed to raise this argument below. (Doc. 25, pp. 42–43). "Ordinarily an appellate court does not give consideration to issues not raised below." *Cardenas v. Madison Realty Cap. LP (In re Biscayne Park, LLC)*, 540 F. App'x 952, 957 (11th Cir. 2013) (quoting *Ala. Dep't of Econ. & Cmty. Affs. v. Ball Healthcare-Dallas, LLC (In re Lett),* 632 F.3d 1216, 1226 (11th Cir. 2011)); *see also Soler v. Formiami20 Inc. (In re Soler-Somohano),* No. 22-10974, 2023 WL 6910859 at *1 (11th Cir. Oct. 19, 2023) ("[A]rguments raised for the first time on appeal are deemed waived." (citation omitted)). "This is particularly true in the bankruptcy context, 'as bankruptcy cases are to be tried in bankruptcy court.'" *In re Biscayne Park*, 540 F. App'x at 957 (quoting *In re Lett*, 632 F.3d at 1226).

The bankruptcy court was not afforded the benefit of Debtor's argument that it had standing to file the Objection to Compromise based upon the non-dischargeability of claims against it. An argument raised for the first time on appeal may be considered only where it meets the "plain error rule."[8] *See id.* In the Initial Brief, Debtor does not acknowledge its non-dischargeability argument is raised for the first time on appeal, much less argue the plain error rule is satisfied. (*See* Doc. 21, pp. 17–21). Nor does the Court find this standard is satisfied here. Moreover, the Court notes that, although Debtor had the right to file a reply brief to address the Trustee's waiver argument and to articulate why the Court should nevertheless consider the issue on appeal, it declined to do so. *See* FED. R. BANKR. P. 8018(a)(3). Accordingly, the Court finds that Debtor's second and final argument on standing has been waived and therefore cannot be used to demonstrate Debtor's standing to appeal. *See In re Biscayne Park*, 540 F. App'x at 957.

Consequently, the Court does not reach Debtor's argument that the bankruptcy court erred by approving of the Settlement Agreement, as it concerns the merits of the case. (Doc. 21, pp. 21–26); *Nationwide Mut. Ins. Co. v. Barrow*,

---

8   The "plain error rule" allows an appellate court's consideration of an issue not raised below only under the following circumstances:

> (1) if it involves a pure question of law, and if refusal to consider it would result in a clear miscarriage of justice; (2) where the appellant raises an objection to an order which he had no opportunity to raise [below]; (3) where the interest of substantial justice is at stake; (4) where the proper resolution is beyond any doubt; or (5) if the issue presents significant questions of general impact or of great public concern.

*In re Biscayne Park*, 540 F. App'x at 957–58 (citing *In re Lett*, 632 F.3d at 1227).

29 F.4th 1299, 1301 (11th Cir. 2022) (noting that when an appellate court finds it lacks jurisdiction for want of the appellant's standing, its "only remaining function is to announce that [it] lack[s] jurisdiction and dismiss the cause.").

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   This consolidated bankruptcy appeal is **DISMISSED** for Appellant Barrier One Inc.'s lack of standing to bring the appeal.

2.   The Clerk of Court is **DIRECTED** to close the case.

**DONE AND ORDERED** in Orlando, Florida on March 29, 2026.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

14